UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JADE HOSPITALITY, LLC, a Florida
limited liability company, SAIL HOLDINGS,
LLC, a Florida limited liability company,
ANUP SHAH, an individual, SHARES
HOSPITALITY, LLC, a Florida limited liability
company, CALATEX HOTEL GROUP, LLC,
a Louisiana limited liability company, SAGESTAR
HOLDINGS, LTD., a Texas limited partnership,
SAGESTAR MANAGEMENT GP, LLC, a Texas
limited liability company, MEHUL PATEL, an
individual, SULPHUR HOTEL GROUP, LLC,
a Louisiana limited liability company, NIMESH
ZAVER, an individual, KERRINGTON
PROPERTIES, LLC, a Florida limited liability
company, TRISTAR HOTELS GROUP, LLC,
a Missouri limited liability company, KIRAN
SHAH, an individual, and all others similarly situated,

CASE NO: 6:10-cv-1790-Orl-31GJK

     Plaintiffs,

vs.

CHOICE HOTELS INTERNATIONAL, INC.,
a Delaware corporation,

     Defendant.

_____/

## CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND

Plaintiffs, JADE HOSPITALITY, LLC, a Florida limited liability company, SAIL

HOLDINGS, LLC, a Florida limited liability company, and ANUP SHAH, an individual

(hereinafter collectively "CLARION INN FRANCHISEE"); SHARES HOSPITALITY,

LLC, a Florida limited liability company, CALATEX HOTEL GROUP, LLC, a Louisiana

limited liability company, NIMESH ZAVER, an individual, (hereinafter collectively

"COMFORT INN FRANCHISEE"); SAGESTAR HOLDINGS, LTD., a Texas limited

RM:7668562:13

partnership, SAGESTAR MANAGEMENT GP, LLC, a Texas limited liability company, MEHUL PATEL, an individual, (hereinafter collectively "COMFORT SUITES FRANCHISEE"); SULPHUR HOTEL GROUP, LLC, a Louisiana limited liability company, and NIMESH ZAVER, an individual, (hereinafter collectively "QUALITY INN & SUITES FRANCHISEE"); KERRINGTON PROPERTIES, LLC, a Florida limited liability company, TRISTAR HOTELS GROUP, LLC, a Missouri limited liability company, and KIRAN SHAH, an individual, (hereinafter collectively "QUALITY INN FRANCHISEE") and all others similarly situated, by and through their undersigned counsel, bring this class action on their own behalf and that of all others similarly situated (all aforementioned parties, hereinafter collectively, the "Plaintiffs"), seeking damages against the Defendant, CHOICE HOTELS INTERNATIONAL, INC. (hereinafter, "CHOICE"), a Delaware corporation, as follows.

## NATURE OF THE CAUSE OF ACTION

1.      Plaintiffs collectively bring this action on their own behalf and on behalf of all other franchisees (whether individuals or entities) who are parties to a CHOICE franchise agreement with CHOICE that was executed between January 1, 1995 and the date this Complaint was filed, regardless of hotel brand affiliation.

2.      Plaintiff, CLARION INN FRANCHISEE, also brings this action on its own behalf and on behalf of all other franchisees (whether individuals or entities) who are parties to a Clarion Inn brand franchise agreement executed between January 1, 1995 and the date this Complaint was filed.

3.      Plaintiff, COMFORT INN FRANCHISEE, also brings this action on its own behalf and on behalf of all other franchisees (whether individuals or entities) who are parties to a Comfort Inn brand franchise agreement executed between January 1, 1995 and the date this

Complaint was filed.

4.  Plaintiff, COMFORT SUITES FRANCHISEE, also brings this action on its own behalf and on behalf of all other franchisees (whether individuals or entities) who are parties to a Comfort Suites brand franchise agreement executed between January 1, 1995 and the date this Complaint was filed.

5.  Plaintiff, QUALITY INN & SUITES FRANCHISEE, also brings this action on its own behalf and on behalf of all other franchisees (whether individuals or entities) who are parties to a Quality Inn & Suites brand franchise agreement executed between January 1, 1995 and the date this Complaint was filed.

6.  Plaintiff, QUALITY INN FRANCHISEE, also brings this action on its own behalf and on behalf of all other franchisees (whether individuals or entities) who are parties to a Quality Inn brand franchise agreement executed between January 1, 1995 and the date this Complaint was filed.

7.  Plaintiffs' action against CHOICE arises from CHOICE's violation of certain terms of the CHOICE franchise agreement that was executed between CHOICE and the Plaintiffs between January 1, 1995 and the date this Complaint was filed, including but not limited to the monetary terms of said agreement.

8.  Plaintiffs' action against CHOICE also arises from violations of law based on unfair and deceptive conduct by CHOICE.

9.  Copies of the CHOICE franchise agreements entered into with the Plaintiffs are attached hereto as **Exhibit "A"** (franchise agreement between CHOICE and CLARION INN FRANCHISEE); **Exhibit "B"** and **Exhibit "C"** (franchise agreement between CHOICE and COMFORT INN FRANCHISEE); **Exhibit "D"** and **Exhibit "E"** (franchise agreement between

CHOICE and COMFORT SUITES FRANCHISEE); **Exhibit "F"** (franchise agreement between CHOICE and QUALITY INN & SUITES FRANCHISEE); **Exhibit "G"** and **Exhibit "H"** (franchise agreement between CHOICE and QUALITY INN FRANCHISEE), respectively, the terms of each franchise agreement being incorporated herein by reference.

10.     Additional CHOICE franchise agreements relating to other CHOICE brands are in the custody and control of CHOICE and will be obtained by the Plaintiffs through discovery. CHOICE's franchising brand names include Cambria Suites, Comfort Inn, Comfort Suites, Clarion Inn, Quality Inn & Suites, Quality Inn, Sleep Inn, Mainstay Suites, Suburban Extended Stay Hotel, Econo Lodge, and Rodeway Inn.

11.     The subject franchise agreements executed by and between the Plaintiffs, including its representative class members, and CHOICE generally have a fixed and set term of fifteen (15) to twenty (20) years.

12.     The subject franchise agreements provide for a franchise fee to be paid to CHOICE ranging in amount from four percent (4%) to five and sixty-five hundredths percent (5.65%) of gross room sales to be paid by franchisees, i.e., the class members herein, on a monthly basis to the franchisor, i.e., the Defendant, CHOICE, (otherwise known as a "Royalty Fee"), and an additional fee ranging from three and one-quarter percent (3.25%) to three and eighty-five hundredths percent (3.85%) of gross room sales to be paid by the franchisee to the franchisor on a monthly basis, otherwise known as a system fee, marketing fee or reservation fee ("System Fee"). The System Fee is specifically designated for advertising, reservations, and related activities.

13.     CHOICE has required the Plaintiffs, and all other similarly situated franchisees, to pay an additional fee (not included in the subject franchise agreements) of up to five percent (5%)

of gross room sales generated from hotel stays by customers who are members of CHOICE's frequent stay or loyalty program known as "Choice Privileges." This additional fee was created by CHOICE as part of CHOICE's proactive matching program (hereinafter, "Proactive Matching") and was initiated by CHOICE.

14.     By imposing such fees <u>after</u> execution of the franchise agreements, CHOICE has violated its franchise agreements with Plaintiffs and members of the class and committed other unfair and deceptive acts.

15.     In essence, CHOICE has created a group of reward members, the majority of whom are not even aware of that status, and siphoned five percent (5%) of the gross room sales revenue from the Plaintiff franchisees in relation to the stays by these reward members and without any contractual or other basis to do so.

16.     Plaintiffs accordingly seek damages against CHOICE on their own behalf and on behalf of their respective representative class members, in addition to attorneys' fees and costs, interest, and other appropriate relief.

## JURISDICTION AND VENUE

17.     Plaintiff, JADE HOSPITALITY, LLC, is a Florida limited liability company that previously operated a CHOICE franchise known as Clarion Inn located in Altamonte Springs, Florida, within the Middle District of Florida.

18.     Plaintiff, SAIL HOLDINGS, LLC, is a Florida limited liability company that previously operated a CHOICE franchise known as Clarion Inn located in Altamonte Springs, Florida, within the Middle District of Florida.

19.     Plaintiff, ANUP SHAH, is an individual residing in Celebration, Florida who previously operated a CHOICE franchise known as Clarion Inn located in Altamonte

Springs, Florida, within the Middle District of Florida, and is otherwise *sui juris*.

20.     Plaintiff, SHARES HOSPITALITY, LLC, is a Florida limited liability company that previously operated a CHOICE franchise known as Comfort Inn located in Plant City, Florida, within the Middle District of Florida.

21.     Plaintiff, CALATEX HOTEL GROUP, LLC, is a Louisiana limited liability company, operating a CHOICE franchise known as Comfort Inn located in Lake Charles, Louisiana, and agrees to submit to the jurisdiction of this Court for purposes of this litigation.

22.     Plaintiff, NIMESH ZAVER, is an individual residing in St. Charles, Louisiana and operating a CHOICE franchise known as Comfort Inn located in Lake Charles, Louisiana, and agrees to submit to the jurisdiction of this Court for purposes of this litigation, and is otherwise *sui juris*.

23.     Plaintiff, SAGESTAR HOLDINGS, LTD., is a Texas limited liability partnership, operating a CHOICE franchise known as Comfort Suites located in Paris, Texas, and agrees to submit to the jurisdiction of this Court for purposes of this litigation.

24.     Plaintiff, SAGESTAR MANAGEMENT GP, LLC, is a Texas limited liability company, operating a CHOICE franchise known as Comfort Suites located in Paris, Texas, and agrees to submit to the jurisdiction of this Court for purposes of this litigation.

25.     Plaintiff, MEHUL PATEL, is an individual residing in Irving, Texas and operating a CHOICE franchise known as Comfort Suites in Paris, Texas, and agrees to submit to the jurisdiction of this Court for purposes of this litigation, and is otherwise *sui juris*.

26.     Plaintiff, SULPHUR HOTEL GROUP, LLC, is a Louisiana limited liability company operating a CHOICE franchise known as Quality Inn & Suites located in Sulphur, Louisiana, and agrees to submit to the jurisdiction of this Court for purposes of this litigation.

27.     Plaintiff, NIMESH ZAVER, is an individual residing in St. Charles, Louisiana and operating a CHOICE franchise known as Quality Inn & Suites located in Sulphur, Louisiana, and agrees to submit to the jurisdiction of this Court for purposes of this litigation, and is otherwise *sui juris*.

28.     Plaintiff, KERRINGTON PROPERTIES, LLC, is a Florida limited liability company that previously operated a CHOICE franchise known as Quality Inn located in Ormond Beach, Florida.

29.     Plaintiff, TRISTAR HOTELS GROUP, LLC, is a Missouri limited liability company that previously operated a CHOICE franchise known as Quality Inn located in Kissimmee, Florida.

30.     Plaintiff, KIRAN SHAH, is an individual residing in Wildwood, Missouri who previously operated a CHOICE franchise known as Quality Inn located in Ormond Beach, Florida and Kissimmee, Florida, and is otherwise *sui juris*.

31.     Defendant, CHOICE, is a Delaware corporation engaging in business throughout the Middle District of Florida, through its franchised and other hotel and business operations.

32.     This is a class action where the damages in controversy exceed, exclusive of interest and costs, the sum of at least $5,000,000.00.

33.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d).

34.     There are numerous representative franchisees of the identified class in the Middle District of Florida.  Orlando and Tampa, Florida are well-known worldwide travel destinations, having thousands of available hotel rooms both city wide and in locations proximate to theme parks.  In particular, the metropolitan area of Orlando, Florida, is

consistently ranked in industry-wide surveys near the very top of the list with respect to the number of hotel rooms available in its respective market. Furthermore, in a 2010 study released by the American Society of Travel Agents (ASTA), Orlando ranked number one as the top destination for the 2010 summer season, and has consistently ranked number one since 2001.

35.     Plaintiffs and a significant number of other class members who they are representing, own and operate hotels located in the Middle District of Florida, where they each entered into a CHOICE franchise agreement.

36.     Venue is appropriate in the Middle District of Florida.

## PARTIES

### I.     The Plaintiffs

37.     Plaintiffs and their representative class members are franchisees who own and operate or previously owned and operated CHOICE franchised hotels, many of which are located in the Middle District of Florida.

38.     Plaintiffs seek to represent CHOICE franchisees in the United States that are parties to certain CHOICE franchise agreements (*See generally* **Exhibits "A"** through **"H"**) executed by franchisees in the period from approximately January 1, 1995 to the date of the filing of this Complaint on a claim that the conduct of CHOICE, by virtue of its Proactive Matching program, has resulted in damages to Plaintiffs and members of their class.

### II.     CHOICE

39.     Defendant CHOICE is one of the largest hotel franchisors in the world.

40.     Defendant CHOICE controls numerous branded hotel properties throughout the United States which operate pursuant to a franchise agreement drafted by CHOICE.

RM:7668562:13

41.    CHOICE's franchising brands include Cambria Suites, Comfort Inn, Comfort Suites, Clarion Inn, Quality Inn & Suites, Sleep Inn, Mainstay Suites, Suburban Extended Stay Hotel, Econo Lodge, and Rodeway Inn.

42.    COMFORT INN is a branded franchise under the CHOICE umbrella.

43.    COMFORT SUITES is a branded franchise under the CHOICE umbrella.

44.    CLARION INN is a branded franchise under the CHOICE umbrella.

45.    QUALITY INN & SUITES is a branded franchise under the CHOICE umbrella.

46.    QUALITY INN is a branded franchise under the CHOICE umbrella.

47.    CHOICE conducts business in Orlando, Florida, Orange County, through its hotel and motel franchises and other activities.

## CLASS ACTION ALLEGATIONS

### I.    Class Definition

48.    Plaintiffs bring this class action on behalf of themselves, and all other franchisees similarly situated, pursuant to Rule 23, *Fed R. Civ. P.*

49.    The class upon whose behalf Plaintiffs bring suit is defined as follows:

> All CHOICE franchisees who are or were parties to a franchise agreement with CHOICE (encompassing any and all of CHOICE's brands as set forth in paragraph 10 herein), exemplar copies of which are attached as **Exhibits "A"** through **"H"** to this Complaint, offered to franchisees from approximately January 1, 1995 to the date of the filing of this Complaint.  The class Plaintiffs may be or may have been parties to other franchise agreements entered into with CHOICE, which agreements are not in the present possession of the Plaintiffs, but will be obtained through discovery.

50.    The franchise agreements have similar provisions that, in each instance, have been breached by CHOICE and, CHOICE has engaged in wrongful conduct against all of its

franchisees irrespective of the hotel brand and, without limitation, as a result, there are no subclasses identifiable by brand or otherwise.

## II.     Prerequisites under Rule 23(a), Fed. R. Civ. P.

51.     The identified class is so numerous that joinder of all members is impracticable. Plaintiffs do not know the exact number of class members because such information is in the exclusive control of the Defendant.  However, due to the nature of the business involved and the duration of the franchise agreements in question, Plaintiffs believe that there are several thousand class members and that the class is sufficiently numerous and geographically dispersed throughout the United States that joinder of all members is impracticable, other than through the use of the class action mechanism.

52.     The following questions of law or fact, at a minimum, are common to the class and predominate over any question affecting only individual class members:

(a) Whether CHOICE breached the subject franchise agreements by requiring the Plaintiffs and all other similarly situated franchisees to pay an additional monthly franchise fee of up to five percent (5%) of gross room sales for all room sales to all customers who may be reward members and whose identity was only ascertained through the mechanism of Proactive Matching; and

(b) Whether CHOICE engaged in unfair and deceptive trade practices by requiring the Plaintiffs and all other similarly situated franchisees to pay an additional monthly franchise fee of up to five percent (5%) of gross room sales for all room sales to all customers who may be reward members and whose identity was only ascertained through the mechanism of Proactive Matching.

53.     The questions set forth in paragraph 52 above and other questions of law or fact are common to the class and predominate over any question affecting only individual class members.

54.     Plaintiffs' claims are typical of the claims of each member of the identified class. The Plaintiffs and all members of the class are or were parties to an identical or virtually identical

CHOICE franchise agreement and are similarly adversely affected by being assessed an additional monthly fee of up to five percent (5%) of gross room sales for stays by alleged loyalty rewards customers, identified as such through the Proactive Matching program implemented within the Choice Privileges program (hereinafter "Proactive Matched Members").

55.     Plaintiffs will fairly and adequately represent the interests of the identified class in that each is a typical franchisee owner who is, or was, a party to a certain CHOICE franchise agreement with no inherent conflicts affecting any other member of the class.

56.     Furthermore, Plaintiffs have retained competent counsel experienced and conversant with contract law, class actions, commercial litigation and Florida state and federal law.

57.     Class action treatment is superior to requiring each individual to bring an independent action for the fair and efficient adjudication of the controversy described herein because it permits a large number of injured franchisees to prosecute their common claims in a single forum simultaneously, efficiently and without unnecessary duplication of effort. Class treatment also permits the adjudication of claims by class members who are small hotel operators located throughout the nation who could not otherwise afford to individually litigate claims against a large corporate defendant.

58.     It is desirable to concentrate the litigation of these claims in this forum in order to avoid the time and expense of individualized litigation. The cost of individualized litigation, both on the parties and the courts, would be substantial. Individualized litigation also presents the potential for inconsistent or contradictory judgments and would magnify the expense and delay to all parties and the court system in multiple rounds of discovery, multiple scheduling orders and multiple trials of the issues in this case. By contrast, the conduct of this action as a class action presents no management difficulties, efficiently conserves the resources of the parties and the court system, and

RM:7668562:13

11

protects the rights of each class member.

59.     The issues of whether CHOICE has breached the franchise agreement(s) between the parties and violated the law by assessing unwarranted monthly franchise fees of up to five percent (5%) of gross room sales derived from Proactive Matching, as part of the Choice Privileges program, predominate over any other questions of law or fact to be resolved in this matter.

## FROM EXECUTION OF A FRANCHISE AGREEMENT TO ADDING A PROACTIVE MATCHING PLAN CHARGE

60.     In approximately 1995, CHOICE began offering the subject franchise agreements, exemplar copies of which are attached as **Exhibits "A"** through **"H,"** to prospective franchisees.

61.     CHOICE continues to offer such franchise agreements to its branded franchisees through the date of the filing of this Complaint.

62.     The franchise agreements are for a fixed and set duration of multiple years, ranging from fifteen (15) to twenty (20) years.

63.     CHOICE franchise agreements provide for the payment of certain designated and discrete franchise fees, in language substantially similar to the following:

> 4.  Fees and Reports.
>
> . . .
>
> b.  Monthly Fees.  Beginning on the Opening Date, you will pay us for each month during the term each of the following monthly fees (collectively "Monthly Fees"):
>
> 1.  Royalty Fee.  A royalty fee of 5.65% [this percentage may differ from agreement to agreement] of the preceding month's Gross Room Revenues ("Royalty Fee").
>
> 2.  System Fee.  A monthly fee of 3.85% [this percentage may differ from agreement to agreement] of the preceding month's Gross Room Revenues for the ongoing development, maintenance and upgrading of the Property Management System and Reservation System, and for advertising, publicity,

> public relations, marketing, reservations and other similar services that we will provide to you under this Agreement and as part of the System (the "System Fee")....You acknowledge and agree that we may...increase the System Fee for increases attributable to inflation, costs of advertising, publicity, public relations or marketing, or for increases in our cost of providing the Property Management or Reservation Systems or any of the other aspects of the System, so long as the increases apply to all or most of the U.S. hotels that are authorized to use the System or the other CHOICE Brand Systems, unless we get your approval to a greater amount.

*See generally* Comfort Inn Franchise Agreement, **Exhibit "C"**, § 4.

64.     The franchise agreement authorizes the franchisor to require payment from the franchisee of only two monthly and recurring fees (1) a Royalty Fee; and (2) a System Fee. The fees are paid through monthly assessments on a franchisee's gross room sales set forth and disclosed in the franchise agreement, as shown above.

65.     Moreover, the CHOICE franchise agreements make no reference to the payment of any charge attributed to a reward program fee related to stays by loyalty reward members, whether or not identified through the practice of Proactive Matching and do not provide for additional, extra-contractual charges to be assessed by CHOICE against franchisees.

66.     The practice of Proactive Matching, and its related dramatic imposition of an entirely new and additional franchise fee of up to five percent (5%) of gross room sales is not part of nor contemplated by the franchise agreement.

### THE SCHEME

67.     Sometime in the 1990s or in the 2000s, CHOICE established its loyalty rewards program known as Choice Privileges, which is a multi-brand program for customers of all of CHOICE's numerous hotel and motel franchises.

Case 6:10-cv-01790-GAP-DAB   Document 1   Filed 12/01/10   Page 14 of 24 PageID 14

68.   The Choice Privileges loyalty rewards program is a points-based program purportedly intended to encourage customers to make repeated stays at one or more of CHOICE's many hotel and motel properties.

69.   Customers can become members of Choice Privileges in two ways.

(a)   First, a customer can complete an application to become a loyalty rewards member and, upon processing the application, is enrolled in the loyalty rewards program.

(b)   Second, a customer may become a member without his knowledge or consent.

70.   When a customer makes an on-line reservation to stay at one of CHOICE's branded hotel properties, the customer automatically is enrolled in Choice Privileges unless the customer takes the affirmative step to opt out of such membership by deleting a check mark in the membership box that has already been checked.

71.   As a result of customers becoming unknowing members of Choice Privileges, the membership base of CHOICE's loyalty rewards program has been grossly inflated by more than one million members.

72.   Unlike other loyalty programs wherein customers are awarded points when they make a conscious decision to stay at a participant's hotel property and present a rewards card upon check in, as part of Choice Privileges, CHOICE began to engage, and continues to engage, in a practice known as "Proactive Matching."

73.   Under the practice of Proactive Matching, guests who may be Choice Privileges members, whether known to them or not, are awarded points, not based on the guest affirmatively electing to stay overnight in a participating hotel and presenting a rewards card, but

RM:7668562:13

14

instead by the hotel guest's identifying information being scanned and matched through corporate software designed to identify the hotel guest's personal identification information. For example, when a guest stays at a CHOICE hotel and does not present his loyalty rewards card, CHOICE's computer software automatically identifies a guest who is a rewards member by matching his name, address and/or telephone number. This guest thus becomes a Proactive Matched Member.

74.     As a result of Proactive Matching, points are awarded to customers who do not seek nor want loyalty reward points and who are often unaware that they have even earned such points.

75.     Points awarded to CHOICE's customers in the loyalty rewards program expire automatically if such points are not used within a specified period of time, (e.g. two to three years). Thus, many Proactive Matched Members exist who do not know they are loyalty reward customers, do not know they have been awarded reward points for staying at a CHOICE hotel, and whose points expire without ever being used.

76.     Franchisees are required to adhere to the Choice Privileges program and are charged a fee of up to a five percent (5%) of the gross room revenue generated for every guest who is proactively matched and awarded points, whether or not the hotel guest is aware of his or her status as a loyalty rewards member and whether or not that hotel guest is an active user of Choice Privileges.

77.     CHOICE has automatically converted all active CHOICE branded members (from prior points-based loyalty programs) into the universe of Choice Privileges members, thereby intermingling all members into one group.

78.     At least two million active members from other reward programs have been

automatically converted into Choice Privileges members without knowing that they are now Choice Privileges members.

79.     Inasmuch as franchisees are charged a fee for each and every Choice Privileges member who is awarded points for staying at a CHOICE branded property and whose identity is proactively matched, i.e., Proactive Matched Members, franchisees are, effectively, being charged an additional franchise fee of up to five percent (5%) of gross room sales, which fee was not bargained for nor agreed upon at any time by the franchisees.

80.     CHOICE has made participation in Proactive Matching mandatory for all CHOICE franchisees, including all class members.

81.     Indeed, CHOICE has informed its franchisees that failure to participate and pay monthly proactive matching fees will result in denial of franchise rights.

82.     As a result of Proactive Matching, the class members are then required to pay an additional franchise fee of five percent (5%) of gross room sales for customers who stay in these properties and whose stays are identified through the Proactive Matching program. This additional franchise fee is invoiced to franchisees by CHOICE on a monthly basis and is a condition of a franchisee remaining in good standing.

83.     Franchisees have no means to opt out of the Proactive Matching program or to protest fees other than to seek to terminate their franchise agreement.  However, if a franchisee terminates its franchise agreement, it is subject to stiff penalties including future royalty payments for the remainder of the contract period at unfair and other unreasonable assessments, which may range from $1,000.00 (one thousand dollars) to $2,000.00 (two thousand dollars) per guest room.

84.     The Proactive Matching charges constitute unfair and unreasonable burdens to

existing franchisees who have abided by the terms of long standing franchise agreements with CHOICE.

85.     Further, these unwarranted charges are being imposed upon already struggling franchisees and are unreasonable, and are exacerbated during difficult economic times and in a period of ongoing decline in hotel attendance.

86.     Inasmuch as many hotel and motel customers have no interest in receiving points and fail to identify themselves as loyalty rewards members at either the time of making the reservation or when checking into the hotel or motel, the practice of proactively matching and then charging the franchisees fees of up to five percent (5%) for stays by Proactive Matched Members does not accomplish the purported goals of the program, which is to build brand loyalty.  Rather, the program only serves to financially harm individual franchisees who must pay additional fees to CHOICE with no benefit to the franchisees.

87.     Because of the actions of CHOICE, it has become necessary for the franchisee Plaintiffs to retain the undersigned attorneys, to whom they are obligated to pay a reasonable fee.

88.     All conditions precedent to the institution of this litigation have been fulfilled.

### COUNT I - BREACH OF CONTRACT

89.     Plaintiffs, on behalf of themselves and members of their respective class, reallege and reincorporate the allegations contained within paragraphs 1 through 88 above as if fully set forth herein.

90.     This is an action for breach of contract against CHOICE.

91.     CHOICE franchise agreements, exemplar copies of which are attached hereto as **Exhibits "A"** through **"H"** have been executed between Plaintiffs and CHOICE, and

RM:7668562:13

constitute enforceable, express, written contracts.

92.    The subject contracts were drafted by CHOICE and, accordingly, are to be construed against CHOICE as its drafter.

93.    By enacting and implementing its Proactive Matching program upon the Plaintiffs, CHOICE has unilaterally assessed an additional, mandatory monthly franchise fee of up to five percent (5%) of gross room sales revenue upon franchisees for each and every hotel and motel stay by Proactive Matched Members, irrespective of whether the customer has elected to stay at a CHOICE branded property because of his status as a Choice Privileges member or sought to become a Choice Privileges member, all in violation of the language of the franchise agreements.

94.    The additional franchise fee of up to five percent (5%) of gross room sales revenue for each and every hotel and motel customer and not merely those who choose to participate in a rewards program, as imposed by the Proactive Matching program, means that the class members, instead of paying a franchise fee of up to five and 65/100 percent (5.65%) of gross room sales, plus a systems fee of up to three and 85/100 percent (3.85%) of gross room sales or for a total fee of up to 9.5%, are now required to pay a total monthly franchise fee of up to fourteen and one-half percent (14.5%) of gross room sales revenue.

95.    The unilateral attempt by the Defendant, CHOICE, to add this additional fee constitutes impermissible and excessive fees which are not authorized to be charged according to the terms of the franchise agreements.

96.    The Proactive Matching program assesses excess charges which were not bargained for nor contemplated in the schedule of fees provided in the franchise agreements.

97.    By imposing extra-contractual fees upon franchisees by virtue of forced

participation in its Proactive Matching program, CHOICE has materially breached the contract with Plaintiffs and all class members.

98.     As a direct result of the contract violation by CHOICE, Plaintiffs and all class members have been injured and damaged in an amount to be determined by the trier of fact. The class members are entitled to recover all damages resulting from this breach.

99.     Plaintiffs are entitled to recover their attorneys' fees in bringing this action, as set forth in paragraph 16 of the franchise agreements. *See*, for example, paragraph 16 of **Exhibit "A."**

WHEREFORE, Plaintiffs, together with all respective class members, respectfully request this Court enter an order certifying that this action may be maintained as a class action, awarding damages against CHOICE in favor of Plaintiffs in an amount in excess of $225,000,000.00, together with attorneys' fees and costs, and any and all such further relief as this Court deems just and proper.

## COUNT II – UNJUST ENRICHMENT

100.    Plaintiffs, on behalf of themselves and members of the class, reallege and reincorporate the allegations contained within paragraphs 8, 15, 16 through 34, 36, 37, 39, 41 through 48, 52(b), 53, 57, 58, 67 through 82, and 85 through 88 above as if fully set forth herein.

101.    This is an action for damages for unjust enrichment against CHOICE.

102.    Plaintiffs and members of the class have conferred a benefit upon CHOICE by having paid money for charges wrongfully invoiced to them through the Proactive Matching program instituted by CHOICE.

103.    CHOICE voluntarily accepted and wrongfully retained the money paid through those fees collected by the Proactive Matching program and used the money raised

by the unfair charges assessed to pay for services that would have otherwise been paid though other sources of funding.

104.    The Plaintiffs have demanded that the Defendant, CHOICE, cease assessing fees for room stays by Proactive Matched Members.

105.    Despite demand to cease operating the program and refund monies unjustly retained by CHOICE, CHOICE has failed to cease operating the Proactive Matching program or to return any of the collected monies.

106.    It would be inequitable for CHOICE to retain the benefits conferred by Plaintiffs and the class in light of the fact that the funds collected by CHOICE pursuant to the Proactive Matching program were wrongfully collected and retained and rightfully belong to Plaintiffs.

107.    Plaintiffs are entitled to an award of damages.

WHEREFORE, Plaintiffs, together with all respective class members, respectfully request this Court enter an order certifying that this action may be maintained as a class action, awarding damages against CHOICE in favor of Plaintiffs in an amount in excess of $225,000,000.00, together with attorneys' fees and costs, and all such further relief as this Court deems just and proper.

## COUNT III –
## VIOLATION OF UNFAIR AND DECEPTIVE TRADE PRACTICES ACTS
### Fla. Stat. § 501.201 et seq.

108.    Plaintiffs on behalf of themselves and members of the class, reallege and reincorporate the allegations contained within paragraphs 1 through 88 above as if fully set forth herein.

109.    This is an action for damages for the violation of the Florida Deceptive and

Unfair Trade Practice Act (hereinafter, "FDUTPA"), Fla. Stat. § 501.201 et seq., by which numerous members of the class have a cause of action against CHOICE by virtue of actions taken and damages accruing in Florida.[1]

110.    In particular, prevailing law provides for damages arising by virtue of misleading oral or written statements that have the capacity, tendency, or effect of deceiving and/or misleading others and such damages are quantified by the amounts of the unlawful charges imposed upon Plaintiffs and their class.

111.    Plaintiffs and class members relied on misrepresentations made by CHOICE regarding what charges they would be expected to pay as franchisees, and were thereby induced to become franchisees or to otherwise continue their franchise relationship with CHOICE.

112.    In its Proactive Matching program, however, CHOICE subsequently assessed an additional, mandatory monthly franchise fee of up to five percent (5%) of gross room sales upon franchisees for each and every hotel and motel customer whose stay is proactively matched irrespective of whether the customer chooses to participate in any rewards program and/or present a rewards card upon check in, all of which is in violation of the language of the contracts.

113.    The additional franchise fee of up to five percent (5%) of gross room sales for each and every hotel and motel customer whose stay is proactively matched and not merely those who choose to participate in a rewards program, as imposed by the Proactive Matching program, means that the class members, instead of paying a franchise fee of up to five and 65/100 percent (5.65%) of gross room sales, plus an additional system fee of up to three and 85/100 percent (3.85%) of

---

[1]    The elements of the cause of action, as set forth herein, apply in the same manner as if asserted under the deceptive and unfair trade practice laws of other jurisdictions in the United States, including Maryland or South Dakota.

RM:7668562:13

gross room sales for a fee of nine and one-half percent (9.5%), are now required to pay a total monthly franchise fee of up to fourteen and one-half percent (14.5%) of gross room sales for all loyalty reward customers which charges constitute impermissible and excessive fees which are not authorized to be charged in any of the provisions of the contracts.

114.   The Proactive Matching program assesses excess charges which were not bargained for nor contemplated in the schedule of fees provided in the franchise agreements.

115.   The mandatory extra-contractual fees imposed upon franchisees by virtue of forced participation in its Proactive Matching program constitute unfair and deceptive trade practices as contemplated by law as more particularly described in the foregoing paragraphs and also for the following reasons:

(a)   The enrollment of customers in a rewards program without their affirmative knowledge and consent, wherein they have to knowingly opt out upon making an on-line reservation, has artificially inflated the membership rewards base by at least 1,000,000 members, and continues to artificially inflate the membership rewards base, increasing CHOICE's incoming profit substantially.

(b)   CHOICE's monthly statements, which are sent to franchisees, hide and mask reference to those guests whose hotel stays are proactively matched, making it almost impossible to determine how the rewards fee is calculated and which guests were proactively matched.

(c)   The practice of awarding points to customers who stay at CHOICE branded properties and do not know they are Choice Privileges members, do not know they have been awarded   loyalty reward points, and never use those points before they automatically expire, is offensive and unlawful.

(d)     The franchise agreement is presented to the franchisee on a "take it or leave it" basis, evidencing the franchisor's uneven bargaining power with the franchisee.

116.    The foregoing acts committed by CHOICE constitute unfair and deceptive trade practices in the conduct of a trade or commerce.

117.    Plaintiffs and class members, having relied on the misrepresentations made by CHOICE regarding what charges they would be expected to pay as franchisees, and by subsequently having been charged additional, arbitrary fees have been subjected to acts by the Defendant, CHOICE, that offends established public policy and is oppressive, unscrupulous and substantially injurious to franchisees, who are consumers pursuant to FDUTPA.

118.    Not only did Plaintiffs and class members rely on the misrepresentations of CHOICE to their own detriment, such actions by CHOICE constitute the type of conduct likely to deceive other consumers acting reasonably in the same circumstances.

119.    As a direct result of the foregoing unfair and deceptive practices of CHOICE, Plaintiffs and class members have been directly injured and have incurred actual damages in the amounts of those excess fees which have been unlawfully charged to them.

120.    Based on the foregoing violations of law, Plaintiffs and class members are entitled to recover all actual damages resulting from this conduct, together with costs and attorney's fees, in addition to pursuing all other legal remedies.

WHEREFORE, Plaintiffs, together with all respective class members, respectfully request this Court enter an order certifying that this action may be maintained as a class action, awarding damages against CHOICE in favor of Plaintiffs in an amount in excess of $225,000,000.00, together with attorneys' fees and costs, and all such further relief as this Court

deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues permissible by law.

Dated this /st day of December, 2010.

RUDEN MCCLOSKY P.A.
420 South Orange Avenue, Suite 920
Orlando, Florida 32801
Telephone:    (407) 244-8022
Facsimile:    (407) 244-8122

David S. Wood, Esquire *(Trial Counsel)*
Florida Bar No: 289515
david.wood@ruden.com
Beth-Ann Krimsky, Esquire *(Trial Counsel)*
Florida Bar No: 968412
beth-ann.krimsky@ruden.com
Suzanne K. Liotta, Esquire
Florida Bar No: 555576
suzanne.liotta@ruden.com
Andrew Gordon, Esquire
Florida Bar No: 68886
andrew.gordon@ruden.com
*Attorneys for the Plaintiffs*